**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JOHN DRAYTON,

Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

________________________________/

No. 2:16-CV-3056-DMC

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties (Docs. 7 and 8), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 17 and 18).

/ / /

/ / /

/ / /

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

Step 1 — Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

/ / /

Step 2 — If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3 — If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted;

Step 4 — If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5 — If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts

to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 24, 2012, claiming disability beginning on July 27, 2009. See CAR 12.[1] Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 11, 2014, before Administrative Law Judge ("ALJ") Bradlee S. Welton. See id. In a May 27, 2015, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): degenerative disc disease of the lumbar and cervical spine with pain;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: full range of light work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform past relevant work.

See id. at 14-19.

After the Appeals Council declined review on November 16, 2016, this appeal followed.

/ / /

/ / /

/ / /

[1] Citations are to the Certified Administrative Record lodged on July 11, 2017 (Doc. 12).

## III. DISCUSSION

Plaintiff contends he is disabled due to pain caused by degenerative disc disease of the lumbar and cervical spine. In his motion for summary judgment, plaintiff argues the ALJ erred in concluding he can perform his past relevant work. According to plaintiff: (1) the ALJ's conclusion is not supported by the medical evidence; (2) the ALJ's adverse credibility finding is not supported by substantial evidence; (3) the ALJ failed to consider the Dictionary of Occupational Titles; and (4) he is presumptively disabled under Medical Vocational Guideline 201.04. Plaintiff argues a remand for further proceedings is inappropriate because disability would be presumed but for the ALJ's errors and the court should instead order a direct award of disability benefits as well as attorney's fees under the Equal Access to Justice Act (EAJA).

### A. Evaluation of the Medical Evidence

As part of his analysis at Step 4, the ALJ determined plaintiff has the residual functional capacity for the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). See CAR 15. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (holding residual functional capacity reflects current "physical and mental capabilities"). Thus, residual functional capacity describes a person's exertional capabilities in light of his or her limitations.[2]

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

To determine plaintiff's residual functional capacity, the ALJ evaluated the medical evidence, including the opinion evidence of record. See CAR 16-18. Regarding evidence from treating medical sources, the ALJ stated:

> The claimant submitted very limited treatment records. There is a report of an examination by orthopedic surgeon Pasquale X. Montesano, M.D., on April 20, 2010 (Exhibit 6F, pp. 46-47). Dr. Montesano observed normal gait and station. There was no muscle atrophy and full range of motion of both upper extremities with normal muscle strength. Range of motion of the lumbar spine was "slightly" decreased with no evidence of tenderness. The claimant returned to Dr. Montesano on May 11, 2009 (Id., pp. 43-45). Dr. Montesano reviewed the MRI from April 9, 2009 (Id., pp. 27-28), and recommended surgical treatment for herniated discs at C3-4, C5-6, and C6-7, but the claimant did not believe the pain was so severe that he wanted to try surgery (Id., p. 44).
>
> He was evaluated and treated at the Sacramento VA Medical Center on January 23, 2013, for high blood pressure and back pain (Exhibits 2F and 3F). The claimant reported chronic back pain since his 2009 motor vehicle accident, progressively worsening for the past two or three months; he stated he had not sought medical care since the accident until this appointment (Exhibit 3F, pp. 18 & 23). He also reported four days of left arm and shoulder pain. On examination, his back was non-tender with full range of motion and straight leg raising was negative (normal) (Id., p. 19). Similarly, the left shoulder was not tender with full passive range of motion (Id.). The doctor observed that while explaining his shoulder and back pain, the claimant was able to use his left arm and shoulder freely, including gesturing and removing his wallet from his back pocket; however, when asked about the arm specifically, he stated he could not move it and used his right arm to support his left (Id., p. 18). He was seen in follow-up on February 20, 2013, with no changes on examination (Id., p. 10) and continued on medication for high blood pressure and back pain (Lisinopril and HCTZ with Norvac and Tramadol) (Id., p. 11). In follow-up on June 17, 2014, he stated took [sic] Tylenol for back pain when needed and he used a back brace; on examination, there was no leg weakness or numbness (Exhibit 7F, p. 10). No more recent medical evidence was submitted.
>
> CAR 16-17.

The ALJ also noted plaintiff was examined at the request of the agency by Dr. Jonathan Schwartz on October 15, 2013. See Id. at 17 (citing Exhibit 4F). Dr. Schwartz concluded plaintiff could lift and carry 25 pounds frequently and 50 pounds occasionally. See id. In November 2013, agency consultant, Dr. Alicia Blando, concurred. See CAR 17. Summarizing his review of the

/ / /

medical evidence, the ALJ stated::

> Overall, the observations of the claimant by trained medical professionals resulted in findings of normal gait and station, no muscle atrophy, full range of motion of both upper extremities, and normal muscle strength. Range of motion of the lumbar spine was slightly decreased with no evidence of tenderness. Dr. Montesano recommended surgery, but the claimant did not believe the pain was so severe that he wanted surgery. He testified he continued to look for work into 2012, indicating he did not find his back pain disabling. . . .
>
> CAR 17.

The ALJ concluded: "Even adopting the most restrictive assessment from the examining and non-examining physicians, the claimant is limited to no less than the full range of light work." See id.

Plaintiff argues the ALJ's Step 4 determination is not supported by substantial evidence. Plaintiff notes the clinical findings of various doctors, specifically Drs. Schwartz, Antovich, Blando, Khav, Montesano, and Selcon. Plaintiff does not, however, reference any specific finding made by the ALJ, let alone articulate how any finding is flawed with respect to these doctors. The court simply cannot discern from plaintiff's brief any claim of error regarding the ALJ's evaluation of the medical evidence in determining his residual functional capacity.

**B. Credibility Determination**

At Step 4, the ALJ also considered plaintiff's own statements and testimony in determining plaintiff's residual functional capacity and found them not credible. See CAR 15-18. The court defers to the Commissioner's discretion in this regard if the proper process is used and the proper reasons are provided. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). To meet this standard, the Commissioner must make explicit credibility findings supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering,

the reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

As to plaintiff's credibility, the ALJ summarized plaintiff's statements and testimony of record as follows:

> The claimant alleged disability due to "back pain," a tumor growing in his chest, and arthritis in his back and legs (Exhibit 4E, p. 2). He later corrected the record and indicated the growth on his chest was determined not to be a tumor (Exhibit 7E). He stated that he stopped working as a security guard/supervisor in July 2009 because of his condition (Exhibit 4E, p. 3), although he worked briefly in 2010 and 2011 doing the same type of work (Exhibit 5E, p. 2).
>
> The claimant described that the pain in his back limited him to walking no more than a block at a time and that he had received a recommendation for surgery but declined (Exhibit 7E). He also stated that he could not wear the heavy utility belt he wore as a security guard because of pain in his back and he did not believe he could perform the part of his job that required him to take someone into custody (Exhibit 7E). The claimant indicated that the motor vehicle accident in 2009 (the car he was driving was rear-ended) caused major pain in his lower back (Exhibit 14E).
>
> He testified he last worked in 2010 and he did not receive any medical treatment from 2009 to 2012 because he was taking pain pills as needed and looking for work. He further testified that his back pain progressively was worse. He believed he could do a security guard job if he could be seated or only do driving.
>
> CAR 15-16.

Evaluating the credibility of plaintiff's statements and testimony, the ALJ stated:

> To the extent that he alleged greater dysfunction [precluding light work], he is not credible. The first and primary factor considered to reach that conclusion is the medical evidence, as described above. The objective findings are limited to an MRI from 2009 with no follow-up by the VA, indicating their conclusion that the claimant's presentation did not warrant further X-rays or other studies. Clinical observations were fairly benign, with only slightly decreased range of motion, non evidence of tenderness in the spine, and normal straight leg raising tests.
>
> A second factor considered is that there is no opinion from a treating or examining source finding the claimant disabled.. Even resolving all inferences in favor of the claimant and taking into consideration his testimony about pain, the undersigned assigns the greatest weight to Dr. Sanford's opinion that the claimant could perform light work. Dr. Sanford had the advantage of a review of the MRI and the prior report by Dr. Montesano, which were not made available to Dr. Schwartz. Accordingly, less weight is assigned to the opinion of Drs. Schwartz and Bland because

> they are less consistent with the longitudinal record.[3]
>
> Another factor considered is that when examined at the VA, the doctor observed that while explaining his shoulder and back pain, the claimant was able to use his left arm and shoulder freely, including gesturing and removing his wallet from his back pocket; however, when asked about the arm specifically, he stated he could not move it and used his right arm to support his left (Exhibit 3F, p. 18). This type of inconsistent and possibly exaggerating behavior tends to undermine the credibility of his other statements about the nature and extent of his pain and other symptoms.
>
> Other factors include that the claimant alleged disability since 2009 but admitted that he continued to look for work at least into 2012 and testified that if he could find a security job that required only sitting or driving, be could do that job.
>
> In light of all of the factors affecting the claimant's credibility, the undersigned does not find the claimant's allegations of disabling symptoms fully to be credible or reliable. In alleging disability, the claimant essentially asserts that he can perform no substantial gainful activity on a sustained basis as a result of his symptoms. As discussed above, the medical evidence does not support these allegations. Moreover, the claimant's own testimony of pain is not found fully to be credible. The undersigned finds that the routine and very limited medical treatment for his symptoms and that no treating or evaluating physician finds him disabled from work constitute reasons for rejecting his allegations and testimony of excess symptoms.
>
> CAR 17-18.

Plaintiff argues the ALJ erred by failing to cite clear and convincing reasons and by citing legally insufficient reasons to support his adverse credibility finding. According to plaintiff, the ALJ erred by: (1) improperly citing his limited treatment during a time ". . .he believed he was not eligible for treatment because he did not have medical insurance. . ."; and (2) concluding that inconsistencies in the record demonstrated exaggeration.

Plaintiff's argument regarding the ALJ's citation to limited medical treatment is unpersuasive. Citing Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007), holding an ALJ errs by citing a lack of medical insurance in support of an adverse credibility finding, plaintiff contends the ALJ similarly erred by referencing his lack of medical treatment from 2009 through 2012, a

---

[3] Plaintiff raises no arguments concerning the weight the ALJ assigned the various medical opinions.

time period plaintiff alleges he lacked medical insurance. Initially, the court observes that plaintiff does not cite to any portion of the record in support of his contention regarding lack of insurance between 2009 and 2012, nor does the ALJ reference lack of insurance in the decision. In any event, the ALJ did not cite a lack of medical insurance in support of his adverse credibility finding. Rather, the ALJ cited the medical record which shows nothing more than routine, limited, and very conservative treatment, which are legally sufficient reasons supported by the record. See Bunnell, 947 F.2d at 345-47.

Plaintiff's argument regarding exaggeration is similarly unpersuasive. The ALJ discounted plaintiff's statements and testimony in part because his presentation at the Sacramento VA Medical Center in January 2013 indicated "inconsistent and possibly exaggerating behavior. . . ." CAR 18. Contrary to plaintiff's characterization of the ALJ's decision, the ALJ cited inconsistencies in plaintiff's statements and testimony in addition to, not as an explanation for, possible symptom exaggeration. Regarding inconsistencies in plaintiff's statements and testimony, the ALJ properly noted that plaintiff's allegation of disability beginning in July 2009 is inconsistent with evidence that plaintiff worked briefly in 2010 and 2011 performing his past relevant work and was looking work in 2012. See Smolen, 80 F.3d at 1284.

**C. Application of the Dictionary of Occupational Titles**

Plaintiff argues the ALJ erred by failing to consider the Dictionary of Occupational Titles (DOT) in making his vocational finding at Step 4. According to plaintiff:

> Here, neither the ALJ nor the Vocational Expert provide an exact DOT listing. Where the ALJ fails to provide a reviewable records [sic], she errors [sic]. DOT 372.667-034 Guard/Security and DOT 372.667-038 Merchant Patroller are semi-skilled jobs that required light strength. Reasonably a security guard must be able to respond physically to protect persons or property. . . . [¶] The ALJ finds Drayton had three jobs which performed require [sic] little standing, walking, lifting or carrying at; (1) Monument Security, (2) Pocket Security Patrol, and (3) Green Valley Security (Tr. 26).

/ / /

> Here, re (1) Monumental Security required Drayton to patrol Mather Air Force Base; patrol the fence line to make sure there was no break in, check the door at the traffic control and check the gate and the sheriff driving range (Tr. 214, 225). As such Monumental Security is not a job which limits standing, walking, lifting and carrying.
>
> Here, re (2) Pocket Security required full time walking. Drayton states "I was placed at this one shopping center busting shop lifter and walking around for 8hrs [sic]" (Tr. 225). As Drayton states, he was required to walk for eight hours a day for Pocket Security did not limit his walking or standing. As such, the Pocket Security entails standing, walking, lifting and carrying.
>
> Here re (3) Drayton worked at Green Valley Security was a job for one month (Tr. 214). Drayton states; "they stuck me on a different site walking around and standing. That was hard on my back and legs" (Tr. 225). As such, the Green Valley Security job entails standing, walking, lifting and carrying.
>
> Therefore (1), (2), and (3) do not support the ALJ's finding of security guard positions which Drayton worked which differ from the DOT listing.

At Step 4, the question is whether the claimant can perform "[t]he actual functional demands and job duties of a particular past relevant job"or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 294 F.3d 849, 845 (9th Cir. 2001). The ALJ properly considers vocational evidence and the claimant's testimony when determining whether the claimant can perform the actual functional demands and duties of past work. See id. at 845. To determine how past relevant work is generally performed, the ALJ need not receive vocational expert testimony, see Crane v. Shalala, 76 F3d 251, 255 (9th Cir. 1996), and the ALJ should look to the Dictionary of Occupational Titles (DOT), see Pinto, 249 F.3d at 845-46.

A review of the record reflects that plaintiff completed a Work History Report describing 10 security guard jobs he performed between 1988 and 2009, as well as in 2011. See CAR 214-28. From 1988 through 2005, plaintiff worked as a security guard for Security Business, Alpha Dez Security, Brookfield Homeowner, Black Hawk Protection Service, and Pocket Security Patrol. See id. at 214. According to plaintiff, these jobs required 8 hours of walking or standing. See id. at 215-19. From 2005 to 2009, plaintiff worked for Monument Security, Pocket Security Patrol, and Green Valley Security in positions he described as requiring

minimal walking or standing. See id. at 214, 220-22.

Because jobs requiring minimal standing can be performed within plaintiff's capacity for the full range of light work, See 20 C.F.R. §§ 404.1567(b) and 416.967(b), the court finds the ALJ's determination that plaintiff can perform his past relevant work as actually performed is supported by proper analysis and substantial evidence. For this reason, the court agrees with defendant that consideration of how plaintiff's past work is generally performed under the DOT was unnecessary and does not reach defendant's argument that any error in the ALJ's vocational finding is harmless.

**D. Application of the Medical-Vocational Guidelines**

Plaintiff argues the ALJ erred by not applying the Medical-Vocational Guidelines to find him disabled. The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[4] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

---

[4] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at

"If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under Step 5 of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

According to plaintiff, had the ALJ not committed the errors argued above, he would be presumed disabled at Step 5 under the Grids. Plaintiff argues:

> The ALJ finds Drayton is advanced age, has severe impairments, his past jobs were light strength, and Drayton has transferable skills (Tr. 18). The Grids 201.04 finds an applicant presumptively disabled where (1) the applicant is advanced age (2) has a high school education or more (3) does not have transferable skills.

---

a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

> Here re; (1) Drayton was 63 when the ALJ issued his decision. He is now 66 years old. For individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment (200.2F). As such he meets the advanced age criteria.
>
> Here; re; (2) Drayton has had two years of college. He served in Vietnam, and when he returned, he became a security guard. He has only worked as a security guard since 1987. He has had no any [sic] other training in the last fifteen years. As such, he is evaluated under the high school graduate or more criteria.
>
> Here, re; (3) security guard is a semi-skilled job with SVP of 3 (Tr. 18). 20 C.F.R. §§416.968 and 404.1568 state, "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. *A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks*" (emphasis added by plaintiff).
>
> Under the Grids 201.04 profile, only skilled work is transferable. Drayton has no skilled work skills which are transferable. The ALJ finds Drayton has no transferable skills. As such, Drayton has no transferable skills (Tr. 25, 86).
>
> As (1), (2), and (3) are met. The ALJ has not been able to show Drayton could work his past work by substantial evidence. Drayton meets Medical Vocational Profile at 201.04 and is disabled.

Plaintiff's argument is unavailing because the Grids are inapplicable in cases where, as here, the ALJ properly concludes the claimant can perform past relevant work. See 20 C.F.R., Pt. 404, Subpart P, Appendix 2, § 200.00(a).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.[5] Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 17) is denied;
2. Defendant's motion for summary judgment (Doc. 18) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

DATED: September 20, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

[5] Because plaintiff has not established any error, the court rejects plaintiff's argument that a direct award of benefits is warranted.